# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

BRANDON EHLIS, on behalf of himself
and all others similarly situated,

               Plaintiff

v.

DAP PRODUCTS, INC.,

               Defendant

Case No. 0:20-cv-01872-PJS-ECW

**MEMORANDUM IN OPPOSITION
TO DEFENDANT DAP PRODUCTS
INC.'S MOTION TO DISMISS**

i

## **TABLE OF CONTENTS**

Introduction ........................................................................................................... 1

Background............................................................................................................. 2

Argument ............................................................................................................... 3

   I.   Plaintiff Has Article III Standing to Sue. ..................................................... 3

      a.   DAP Never Made a Prelitigation "Refund Offer" to Plaintiff. ............................ 5

      b.   Plaintiff Suffered Article III Injury Regardless of DAP's Purported Refund Offer Made After the Initiation of Litigation. .......................................................... 6

      c.   DAP's Purported Refund Offer Does Not Adequately Remedy Plaintiff's Injury .... 7

   II.   The Court Has Specific Personal Jurisdiction Over DAP......................................... 7

   III.   Plaintiff May Constitutionally Bring Non-Minnesota Statutory Claims Against DAP. ..................................................................................................................11

   IV.   Plaintiff Has Adequately Alleged a Sufficient Causal Nexus and/or Reliance to Assert His Statutory Claims. ................................................................................ 14

      a.   Plaintiff Has Sufficiently Pled a Causal Nexus Between Injury Suffered and Defendant's Conduct Under Rule 9(b). ..................................................... 16

   V.   Plaintiff Has Adequately Pled His MDTPA Claim.................................................. 20

      a.   Plaintiff Has Alleged Likelihood of Future Harm Under the MDTPA. .............. 20

      b.   Plaintiff Properly Requested Injunctive Relief for His MDTPA Claim............. 21

   VI.   Plaintiff Has Adequately Pleaded His Warranty Claims. .................................... 22

      a.   Plaintiff Provided DAP Pre-Suit Notice of His Warranty Claims...................... 22

      b.   Plaintiff's Maryland Express Warranty Claim Does Not Fail Due to a Lack of Privity........................................................................................................... 23

      c.   Coloration and Clarity Are Part of DAP's Express Warranty. ........................... 24

      d.   The Sealant's Coloration Is Part of the Ordinary Purpose for Which the Sealant Is Used. .........................................................................................................25

   VII.   Plaintiff Has Properly Alleged His Unjust Enrichment Claim. ......................... 28

   VIII.   Plaintiff's Claims Are Not Time-Barred.............................................................. 29

Conclusion ........................................................................................................... 31

# **TABLE OF AUTHORITIES**

Page(s)

## **Cases**

*Ahlgren v. Muller*,
  438 F. Supp. 3d 981 (D. Minn. 2020)................................................................8, 10

*Allstate Ins. Co. v. Hague*,
  449 U.S. 302 (1981)..............................................................................................11, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................................14

*Axcan Scandipharm, Inc. v. Ethex Corp.*,
  585 F. Supp. 2d 1067 (D. Minn. 2007)......................................................................18

*Baker v. John Morrell & Co.*,
  266 F. Supp. 2d 909 (N.D. Iowa 2003)......................................................................22

*Bank of Am., N.A. v. Jill P. Mitchell Living Trust*,
  822 F. Supp. 2d 505 (D. Md. 2011)...........................................................................15

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...................................................................................................14

*Block v. Toyota Motor Corp.*,
  795 F. Supp. 2d 880 (D. Minn. 2011)........................................................................19

*Breiland v. MeritCare Health Sys.*, Civ. No. 09-2605 (RHK/RLE),
  2010 WL 1782198 (D. Minn. Apr. 30, 2010)..........................................................9, 10

*Cambria Co., LLC v. Pental Granite & Marble*, Inc.,
  Civil No. 12-cv-228 (JRT/AJB), 2013 WL 1249216 (D. Minn. Mar. 27, 2013) ...........9

*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016).....................................................................................................6

*Carlson v. A.L.S. Enters., Inc.*,
  Civ. No. 07–3970, 2008 WL 185710 (D. Minn. Jan. 18, 2008)..................................19

*Chafin v. Chafin*,
  568 U.S. 165 (2013).....................................................................................................7

*Charles Schmitt & Co. v. Barrett*,
  670 F.2d 802 (8th Cir. 1982).....................................................................................22

*Ciardelli v. Rindal*,
  582 N.W.2d 910 (Minn.1998) ..................................................................................304

*City of Wyoming v. Procter & Gamble Co.*,
  Civil. No. 15-2101 (JRT/TNL), 2016 WL 5496321 (D. Minn. Sept. 28, 2016) ...........15

*Coen v. Coen*,
  509 F.3d 900 (8th Cir. 2007) ......................................................................................8

*Daigle v. Ford Motor Co.*,
  713 F. Supp. 2d 822 (D. Minn. 2010).........................................................................26

*Dakota Indus, Inc. v. Ever Best Ltd.*,
  28 F.3d 910 (8th Cir. 1994) ........................................................................................8

*Data Sec. Breach Litig.*,
  371 F. Supp. 3d 1150 (N.D. Ga. 2019) ........................................................ 12
*Davidson v. Kimberly-Clark Corp.*,
  889 F.3d 956 (9th Cir. 2018) .................................................................... 21
*Dickerson v. Longoria*,
  995 A.2d 721 (Md. 2010) ......................................................................... 24
*Driscoll v. Standard Hardware, Inc.*,
  785 N.W.2d 805 (Minn. Ct. App. 2010) ...................................................... 26
*Drobnak v. Andersen Corp.*,
  561 F.3d 778 (8th Cir. 2009) .................................................................... 17
*Elyazidi v. SunTrust Bank*,
  Civil Action No. DKC 13-2204, 2014 WL 824129 (D. Md. Feb. 28, 2014) ............... 13
*Fleisher v. Fiber Composites, LLC*,
  No. 12-1326, 2012 WL 5381381 (E.D. Pa. Nov. 2, 2012) .................................. 27
*Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) ................................................................................ 4
*Gardner v. First Am. Title Ins. Co.*,
  296 F. Supp. 2d 1011 (D. Minn. 2003) ........................................................ 21
*Genesis Health Clubs, Inc. v. Led Solar & Light Co.*,
  No. 13-1269-JWL, 2014 WL 1246768 (D. Kan. Mar. 26, 2014) ........................... 27
*Genesis Healthcare Corp. v. Symczyk*,
  569 U.S. 66 (2013) .................................................................................. 6
*Green v. Wells Fargo Bank, N.A.*,
  927 F. Supp. 2d 244 (D. Md. 2013) ............................................................ 15
*Highway Sales Inc. v. Blue Bird Corp.*,
  559 F.3d 782 (8th Cir. 2009) .................................................................... 30
*Hudock v. LG Elecs. U.S.A., Inc.*,
  Civil No. 16-1220 (JRT/FLN), 2017 WL 1157098 (D. Minn. Mar. 27, 2017) ............. 7
*Hudock v. LG Elecs. U.S.A., Inc.*,
  No. CV 16-1220 (JRT/KMM), 2020 WL 1515233 (D. Minn. Mar. 30, 2020) ............... 4
*In re Levaquin Prods. Liab. Litig.*,
  752 F. Supp. 2d 1071 (D. Minn 2010) .................................................... 25, 28
*In re Polaris Mktg., Sales Practices, & Prods. Liab. Litig.*,
  364 F. Supp. 3d 976 (D. Minn. 2019) ......................................................... 18
*In re St. Jude Medical, Inc.*,
  522 F.3d 836 (8th Cir. 2008) .................................................................... 16
*Isip v. Mercedes–Benz USA, LLC*,
  65 Cal. Rptr. 3d 695 (Cal. Ct. App. 2007) .................................................... 26
*Jacques v. First Natn'l Bank of Md.*,
  515 A.2d 756 (Md. 1986) ......................................................................... 23
*Jalin Realty Capital Advisors, LLC v. A Better Wireless, NISP, LLC*,
  Civil No. 11-165 (JRT/LIB), 2011 WL 13136511 (D. Minn. Aug. 30, 2011) ............. 11

*Jessie v. Potter*,
   516 F. 3d 709 (8th Cir. 2008) ....................................................... 29
*Johnson v. Bobcat Co.*,
   175 F. Supp. 3d 1130 (D. Minn. 2016).......................................... 4, 5
*Joyce v. Teasdale*,
   635 F. 3d 364 (8th Cir. 2011) ...................................................... 29
*Karhu v. Vital Pharm., Inc.*,
   No. 13-60768-CIV, 2013 WL 4047016 (S.D. Fla. Aug. 9. 2013)................ 24
*LaPuma v. Collinwood Concrete*,
   661 N.E. 2d 714 (Ohio 1996) ...................................................... 27
*Lawley v. Northam*, No. CIV.A. ELH-1,
   0-1074, 2011 WL 6013279 (D. Md. Dec. 1, 2011) ........................ 23
*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992).................................................................... 4
*Masterson Pers., Inc. v. McClatchy Co.*,
   No. 05-1274, 2005 WL 3132349 (D. Minn. Nov. 22, 2005)................... 21
*McGregor v. Uponor, Inc.*, No.,
   09-1136, 2010 WL 55985 (D. Minn. Jan. 4, 2010) ................... 17, 19
*Mylan Pharms. Inc. v. Kremers Urban Dev.*,
   No. Civ. A. 02-1628 GMS, 2003 WL 22711586 (D. Del. Nov. 14, 2003) ....... 11
*North Central EMS Corp. v. Bound Tree Med.*,
   No. 15-2793 (JRT/LIB), 2016 WL 544472, at *9 (D. Minn. Feb. 10, 2016).......... 28
*OmegaGenesis Corp. v. Mayo Found. For Med Educ.*,
   & Res., 851 F.3d 800 (8th Cir. 2017) ............................................ 19
*Pangaea, Inc. v. Flying Burrito LLC*,
   647 F.3d 741 (8th Cir. 2011) ........................................................ 8
*Safco Prods. Co. v. WelCom Prods., Inc.*,
   730 F. Supp. 2d 959 (D. Minn. 2010)............................................ 10
*Shillman v. Hobstetter*,
   241 A.2d 570 (Md. 1968) ............................................................ 24
*Simmons v. Lennon*,
   773 A.2d 1064 (Md. Ct. Spec. App. 2001)...................................... 23
*Smith v. Questar Capital Corp.*, No. 12-cv-2669 (SRN/TNL),
   2013 WL 3990319 (D. Minn. Aug. 2, 2013) .................................... 29
*Solvay Pharms., Inc. v. Glob. Pharms.*,
   298 F. Supp. 2d 880 (D. Minn. 2004)............................................ 19
*Stearns v. Select Comfort Retail Corp.*, Civ. A.,
   No. 08–2746, 2009 WL 1635931 (N.D. Cal. June 5, 2009)................... 26
*Streambend Props. II, LLC v. Ivy Tower Minneapolis, LLC*,
   781 F.3d 1003 (8th Cir. 2015) .............................................. 14, 15
*Swearingen v. Late July Snacks LLC*,
   Case No. 13-cv-04324-EMC, 2017 WL 1806483 (N.D. Cal. May 5, 2017)................ 17

*Thunander v. Uponor, Inc.*,
    887 F. Supp. 2d 850 (D. Minn. 2012) .......................................................... 26

*Tracton v. Viva Labs, Inc.*,
    No.: 16-cv-2772, 2017 WL 4125053, at *5 (S.D. Cal. Sep. 18, 2017) ......................... *19*

*Tuttle v. Lorillard Tobacco Co.*,
    No. CIV991550, 2001 WL 821831, at (D. Minn. July 5, 2001) .................................... 22

*United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin. Corp.*,
    690 F.3d 951 (8th Cir. 2012) ..................................................................... 14

*United States ex rel. Roop v. Hypoguard USA, Inc.*,
    559 F. 3d 818) (8th Cir. 2009) ..................................................................... 15

*Vandelune v. 4B Elevator Components Unlimited*,
    148 F.3d 943 (8th Cir. 1998) ..................................................................... 9

*Walpert, Smullian, & Blumenthal, P.A. v. Katz*,
    762 A.2d 582 (Md. 2000) ......................................................................... 23

## **Statutes**

Md. Com. Law § 2-313 ................................................................................ 25

## **Rules**

Fed. R. Civ. P. 54(c) ................................................................................ 22

Fed. R. Civ. P. 12(b)(6) ............................................................................. 14, 29

Fed. R. Civ. P. 9(b) ......................................................................... 2, 14–20, 30

**Introduction**

Plaintiff respectfully submits this memorandum of law in opposition to Defendant's Motion to Dismiss (the "Motion" or "Mot.") (ECF 17). Plaintiff Brandon Ehlis ("Plaintiff") brings claims under consumer protection, warranty, and contract theories, and seeks compensation and equitable relief to remedy DAP's materially false and deceptive marketing practices as set out in the Class Action Complaint ("Complaint" or "Compl.") (ECF 1).

A substantial portion of DAP's Motion contends that Plaintiff's claims should be dismissed, chiefly because of the contents of self-serving affidavits from DAP employees which describe DAP's purported practice of providing refunds to dissatisfied customers. Defendant asks this Court to take DAP's statements at face value, without the benefit of discovery, and decide numerous factual issues in favor of Defendants, rather than assuming all the facts in the Complaint to be true and construing all reasonable inferences in favor of Plaintiff. DAP's Motion instead relies on premature, fact-based arguments that cannot be resolved by Defendant's Motion.

DAP's arguments that Plaintiff lacks injury sufficient to confer Article III standing rely on DAP's uncommunicated, informal, and (by all appearances) completely optional practice of providing refunds to dissatisfied consumers. This Court should also reject the argument that it lacks personal jurisdiction over DAP, as the Complaint contains allegations sufficient to demonstrate that DAP purposefully availed itself of the privilege of doing business in Minnesota and that the suit arises out of or relates to DAP's contacts with this forum. Defendant's choice of law arguments should similarly be rejected, as

1

Defendant misconstrues the constitutional factors that allow Maryland law to apply to Plaintiff's claims and overlooks the fact that the majority of the alleged wrongdoing occurred in Maryland, at DAP's headquarters, "product lab", and manufacturing plant. Furthermore, Plaintiff alleged his claims and his reliance on Defendant's misleading statements with sufficient particularity to inform DAP of the core factual basis of his fraud claims, as required by Rule 9(b), and Defendants have failed to cite convincing authority suggesting otherwise.

DAP's arguments to dismiss Plaintiff's warranty claims are unavailing and once again implicate complex factual issues unsuitable for resolution at the Motion to Dismiss stage. Defendant's position that the clarity and coloration of the "Crystal Clear" Sealant is entirely peripheral to the product's use is baffling and unconvincing, particularly given the numerous customer reviews showing otherwise.

For these reasons, and others set out in additional detail below, Plaintiff respectfully requests that the Court deny Defendant's Motion in its entirety.

## **Background**

This action challenges DAP Products, Inc.'s ("DAP" or "Defendant") practice of falsely advertising the DAP 3.0 "Crystal Clear" Kitchen, Bathroom and Plumbing Sealant (the "Sealant") as "Crystal Clear" when, in reality, the "Crystal Clear" Sealant turns yellow within several weeks to months of its application. DAP knew since at least 2012 that the Sealant discolors after application. Indeed, DAP's customers have complained about the Sealant's dramatic discoloration for nearly a decade, one customer describing the shade as "the most awful yellow color you've ever seen." (Compl. ¶¶ 17–18.) Sealant products are

2

commonly offered in a variety of colors, including white, almond, or clear. (*Id*. ¶ 12.) DAP markets and advertises the "Crystal Clear" Sealant and emphasizes its clarity and color in multiple locations, including in the Sealant's name, on its packaging, and in its marketing and technical materials. DAP claims that the Sealant is "Crystal Clear" and that "[t]he Crystal Clear clarity allows the beauty of the surface to shine through the sealant." (Compl. ¶ 14) (citing DAP's Technical Bulletin for the "Crystal Clear" Sealant). Plaintiff purchased the Sealant during the Class Period and watched the "Crystal Clear" Sealant turn yellow after application. (Compl. ¶¶ 6, 19.) Like Plaintiff, numerous DAP customers have also watched their "Crystal Clear" Sealant yellow. (Compl. ¶ 18.) Plaintiff cites to customer reviews describing the "Crystal Clear" Sealant's discoloration. (Compl. ¶ 18, at pp. 5–14.)

DAP continues to falsely advertise its Sealant as "Crystal Clear", misstating this material specification of the product. Indeed, rather than addressing the discoloration defect or its false advertising, DAP orchestrated a campaign to dilute the overwhelmingly negative reviews of its "Crystal Clear" Sealant by distributing free samples of the Sealant and seeking positive reviews as soon after application as possible, before the sealant turned yellow. (Compl. ¶¶ 20–25).

## Argument

### I.   Plaintiff Has Article III Standing to Sue.

DAP contends that because it would have refunded Plaintiff the purchase price, Plaintiff is deprived of an Article III injury and lacks standing to bring his claims.[1] DAP's

---

[1] DAP additionally argues that Plaintiff has no standing to bring claims under Maryland law. That contention, addressed in Section III, is wrong. Maryland law may be constitutionally applied. *See,*

position relies on a faulty reading of *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1137–38 (D. Minn. 2016), where this Court recognized a pre-litigation refund offer may deprive a plaintiff of an injury. DAP's position should be rejected because: (1) it did not issue a pre-litigation refund offer but rather indicated for the first time in its Motion to Dismiss that it *would have* offered a refund, had Plaintiff requested one; and (2) under established precedent, DAP's after-the-fact offer does not deprive Plaintiff of an Article III injury.

To satisfy Article III's standing requirements, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envt'l. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). At the pleading stage, "general factual allegations of injury resulting from defendant's conduct may suffice" to establish standing. *Lujan*, 504 U.S. at 561.

Here, Plaintiff has alleged an injury-in-fact attributable to DAP's misconduct. Specifically, Plaintiff alleges DAP represented that the Sealant would be "Crystal Clear." (Compl. ¶ 3.) Plaintiff purchased DAP's Sealant expecting it to be "Crystal Clear," but after applying the product, it soon turned yellow. (*Id.* at ¶ 6.) Plaintiff did not receive what he paid for and, notably, DAP does not appear to sell the product in the color yellow, let alone "the most awful yellow color you've ever seen." When a person deliberately

---

*e.g.*, *Hudock v. LG Elecs. U.S.A., Inc.*, No. CV 16-1220 (JRT/KMM), 2020 WL 1515233, at *8–9 (D. Minn. Mar. 30, 2020) ("Hudock I").

purchases "Crystal Clear" Sealant and the product turns an unpleasant yellow color after it is applied and adhered to a surface, it may be fairly alleged that person was deceived and did not receive what they paid for. Despite these injuries, DAP claims Plaintiff lacks standing because DAP now states that it would have refunded Plaintiff the cost of the Sealant had Plaintiff requested one before litigation. DAP's contention fails.

### a.  DAP Never Made a Prelitigation "Refund Offer" to Plaintiff.

DAP's argument that its "refund offer" negates Plaintiff's Article III injury relies on a faulty reading of *Johnson*. (Mot., pp. 3–4.) *Johnson* notably did not hold that any post-litigation offer to refund costs is sufficient to deprive a plaintiff of standing. As here, the defendant in *Johnson* asserted the plaintiff "lack[ed] Article III standing because [defendant] offered to refund the full cost of the [product]". *Johnson v. Bobcat Co.*,175 F. Supp. 3d at 1137. Although the *Johnson* court ultimately held the defendant's refund offer did not deprive the Plaintiff of standing, *Johnson* stated that a "*pre-litigation* offer for complete relief *could potentially* deprive a plaintiff of Article III standing[.]" *Id* (emphasis added).

Here, however, Plaintiff provided notice of his claims to DAP prior to the filing of the Complaint, yet DAP made no formal refund offer to Plaintiff prior to litigation. In fact, DAP has made no offer at all. Rather, it relies on an affidavit asserting that it is supposedly DAP's practice to refund costs when the product "fails to perform" or when customers are not satisfied with their purchases. *See* Decl. of Jason Toth ¶¶ 5–6, (ECF 19). Although it provides a warranty under which Plaintiff allegedly could have recovered his costs, DAP incongruously argues in its Motion to Dismiss that this warranty does not cover

discoloration of the Sealant. *See* Mot. at 17; Def's Ex. A, ECF No. 18-1 (stating "DAP warrants this product for sealant purposes.").

While DAP now claims its refund policy requires it to refund customers who are "not satisfied with their purchases, including as to the aesthetic," DAP never presented such an invitation for a refund (or more accurately, an invitation for Plaintiff to request a refund) prior to Plaintiff's Complaint, even though Plaintiff notified DAP of its intent to file a complaint in a demand letter. *See* Decl. of David A. Goodwin, Ex. A. Plaintiff had no knowledge of DAP's purported practice of refunding the costs of a defective tube of Sealant—which, notably, DAP has no apparent obligation to follow. Therefore, no such pre-litigation offer, as was contemplated in *Johnson*, occurred here.

### b. Plaintiff Suffered Article III Injury Regardless of DAP's Purported Refund Offer Made After the Initiation of Litigation.

Furthermore, the purported availability of a refund does not obviate Plaintiff's injury for standing purposes because DAP's affidavit stating Plaintiff was "eligible for a refund" occurred *after* the initiation of litigation. Toth Decl. ¶ 6; *see Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165–66 (2016) ("[A]n unaccepted settlement offer or offer of judgment does not moot a plaintiff's case" for purposes of Article III standing); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 81 (2013) ("When a plaintiff rejects such an offer—however good the terms—her interest in the lawsuit remains just what it was before. And so too does the court's ability to grant her relief. An unaccepted settlement offer— like any unaccepted contract offer—is a legal nullity, with no operative effect." (J. Kagan, dissenting)).

DAP's after-the-fact "refund offer" that it claims it would make if Plaintiff asks does not deprive Plaintiff of Article III standing. Indeed, DAP's purported offer is particularly dubious because DAP failed to make it upon receiving Plaintiff's demand letter.

### c. DAP's Purported Refund Offer Does Not Adequately Remedy Plaintiff's Injury.

Moreover, an invitation for Plaintiff to reach out and seek a refund offer for the faulty Sealant does not remedy Plaintiff's principal and ongoing complaint: that DAP promised Plaintiff—and continues to represent to its customers—that its Sealant is "Crystal Clear", when DAP in fact knows the Sealant will yellow shortly after application. *See Hudock v. LG Elecs. U.S.A., Inc.*, Civil No. 16-1220 (JRT/FLN), 2017 WL 1157098, at *6 (D. Minn. Mar. 27, 2017) ("Hudock II") (holding a plaintiff faces a risk of future injury when he remains in the market for a product that may still be falsely advertised). That potential future injury is sufficient for standing. *See, e.g.*, *id.*; *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." (internal quotations omitted)).

Plaintiff's alleged injuries are sufficient to establish Article III standing. DAP's "refund offer", which was never actually made and for which DAP has no apparent obligation to abide by, does not demonstrate otherwise.

## II. The Court Has Specific Personal Jurisdiction Over DAP.

DAP contends that the Court lacks personal jurisdiction over Plaintiff's claims, asserting Plaintiff has alleged general jurisdiction and therefore the Complaint must be dismissed. (Mot. at 6.) Plaintiff, however, asserts the Court has specific personal

7

jurisdiction and alleges facts that DAP, "through its contacts with the forum, purposefully avail[ed] itself of the privilege of conducting business in the forum" and that this suit "arise[es] out of or relate[s] to [DAP's] contacts with the forum." *Pangaea, Inc. v. Flying Burrito LLC*, 647 F.3d 741, 746 (8th Cir. 2011).

Federal courts may assume jurisdiction over out of state defendants to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution. *Coen v. Coen*, 509 F.3d 900, 905 (8th Cir. 2007) (citing *Dakota Indus, Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)). "Minnesota's long-arm statute extends as far as the Due Process Clause allows," meaning "the Court need only consider whether exercising personal jurisdiction over [Defendant] is consistent with due process." *Ahlgren v. Muller*, 438 F. Supp. 3d 981, 986 (D. Minn. 2020).

"In addition to establishing minimum contacts with the forum, for specific personal jurisdiction to be proper, the complained-of conduct must also arise out of the contacts that defendant creates within the forum state." *Id.* at 987. "[I]t is the defendant's conduct that must form the necessary connection with the forum State for jurisdiction to be proper." *Id.* (internal citations removed). The Eighth Circuit employs a five-factor test for making a personal jurisdiction determination: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties." *Id.* For purposes of specific jurisdiction:

> The five-factor test essentially boils down to three: (1) whether the quality and quantity of the defendants['] contacts with the forum State establish minimum contacts; (2) whether the litigation arises out of those contacts; and

finally, if the first two are met, (3) whether it is reasonable, considering the interest of the forum state and convenience to the parties, to force an out-of-state litigant to defend itself in the forum state.

*Id.* at 987.

Here, Plaintiff's circumstances and DAP's contacts with Minnesota provide this Court with specific personal jurisdiction over DAP. First, DAP has minimum contacts with Minnesota such that this Court may exercise personal jurisdiction over it. DAP purposefully targets Minnesota customers through marketing and advertisements and consistently sells its products, including the "Crystal Clear" Sealant at issue, in Minnesota to Minnesota residents through third-party home improvement stores. *See, e.g.*, *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 948 (8th Cir. 1998) (finding specific personal jurisdiction where a defendant "purposefully reaped the benefits" in various states where the defendant "pour[ed] its products into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area." (internal quotations removed)); *Cambria Co., LLC v. Pental Granite & Marble*, Inc., Civil No. 12-cv-228 (JRT/AJB), 2013 WL 1249216, at *8 (D. Minn. Mar. 27, 2013) (finding specific personal jurisdiction where a defendant "attempted to pour its products, including the products at issue, into Minnesota through [a third party]" suggesting "that [the defendant] purposefully availed itself of this forum in an attempt to sell its allegedly infringing products."); *Breiland v. MeritCare Health Sys.*, Civ. No. 09-2605 (RHK/RLE), 2010 WL 1782198, at *3 (D. Minn. Apr. 30, 2010) (holding personal jurisdiction existed where the defendant's conduct was "intentionally and specifically directed at Minnesota" and the defendant maintained "continuous and systematic general business contracts with this state.")

(internal quotations omitted); *Safco Prods. Co. v. WelCom Prods., Inc.*, 730 F. Supp. 2d 959, 965 (D. Minn. 2010) (holding sales and attempted sales can satisfy minimum contacts). DAP's website, additionally, lists vendors in Minnesota that sell its products.[2]

Second, Plaintiff's claims arise out of DAP's contacts with Minnesota. Plaintiff is a Minnesota resident who purchased the defective sealant in Minnesota and used the Sealant in Minnesota and the Sealant subsequently failed in Minnesota resulting in injury to Plaintiff.[3] (Compl. ¶ 6.) *See Safeco*, 730 F. Supp. 2d at 964–65 ("Sales and attempted sales of the infringing product directed at the buyer's in the forum state satisfy the second prong" that the "claims arise out of and relate to [defendant's] contacts with Minnesota."). Plaintiff, furthermore, purchased the Sealant expecting it to be "Crystal Clear" because of DAP's repeated misrepresentations, including those made in Minnesota, stating that it would be crystal clear.

Third, where "sufficient minimum contacts and a nexus exist, 'it is presumptively not unreasonable to require [a defendant] to submit to the burdens of litigation in the forum." *Ahlgren*, 438 F. Supp. 3d at 988. Minnesota has a great interest in protecting its residents against products sold in Minnesota that use material misrepresentations about the product color and quality. *See Breiland*, 2010 WL 1782198, at *9 ("Minnesota has a strong interest in providing a forum for its residents[.]"); *Safco*, 730 F. Supp. 2d at 965–66

---

[2] *DAP 3.0 Home & Kitchen*, DAP.com, https://www.dap.com/products-projects/product-categories/caulks-sealants/hybrid/dap-3-0-k-b/ (last visited, Dec. 8, 2020) (clicking "Where to Buy" will allow users to search for Minnesota vendors).

[3] If the Court deems it necessary, upon amendment, Plaintiff could (and would) allege that he purchased DAP "Crystal Clear" Sealant at a Home Depot located in Minnesota and used the Sealant in Minnesota.

(holding "Minnesota has an interest . . . in deterring businesses from marketing and selling infringing products to Minnesota customers."). As such, the requirements to establish personal jurisdiction exist here.

While "there is no requirement that a plaintiff allege the facts that support a finding of personal jurisdiction in the complaint," (*Mylan Pharms. Inc. v. Kremers Urban Dev.*, No. Civ. A. 02-1628 GMS, 2003 WL 22711586, at *4 (D. Del. Nov. 14, 2003)), to the extent anything is missing from Plaintiff's complaint, through amendment he would allege the facts necessary to show his claim arose out of DAP's contacts with Minnesota. *See, e.g.*, *Jalin Realty Capital Advisors, LLC v. A Better Wireless, NISP, LLC*, Civil No. 11-165 (JRT/LIB), 2011 WL 13136511, at *3 (D. Minn. Aug. 30, 2011) (collecting cases allowing plaintiffs to amend a complaint for purposes of establishing specific personal jurisdiction). Plaintiff at all times could allege that: (1) Plaintiff resides in Minnesota; (2) DAP advertises, markets, and sells the Sealant in Minnesota; (3) Plaintiff purchased the Sealant in Minnesota; (4) Plaintiff applied the Sealant in his home in Minnesota; (5) the Sealant turned from clear upon application to yellow shortly thereafter in Plaintiff's Minnesota home; (6) Plaintiff suffered injury-in-fact in Minnesota; and (7) DAP's misconduct in Minnesota directly and proximately caused Plaintiff's damages.

## III. Plaintiff May Constitutionally Bring Non-Minnesota Statutory Claims Against DAP.

DAP's constitutional attack on Plaintiff's non-Minnesota statutory claims must be rejected under well-recognized Supreme Court precedent. The "long accepted" constitutional rule is "that a set of facts giving rise to a lawsuit, or a particular issue within

a lawsuit, may justify, in constitutional terms, application of the law of more than one jurisdiction." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 307–08 (1981). As a result, the forum State may have to select one law from among the laws of several jurisdictions having some contact with the controversy. *Id. See also In re Equifax, Inc. Cust. Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1178–79 (N.D. Ga. 2019) (rejecting the argument that "deceptive trade practice laws of foreign states cannot be applied to conduct that took place in [the forum state]" because while "there are limits to the sovereignty of each state," it is not true that "the laws of these states only extend to conduct that takes place within the states, or that the specific consumer protection statutes asserted by the Plaintiffs only extend to conduct taking place within the states.").

Despite this precedent, DAP contends that Plaintiff's Maryland statutory claims cannot be applied "extraterritorially" because, according to DAP, all the wrongful conduct occurred in Minnesota. (Mot. at 2.) This argument ignores Plaintiff's factual allegations and mischaracterizes the law.

First, Plaintiff's residence in Minnesota does not, as DAP seems to argue, constitutionally mandate application of Minnesota law to the exclusion of other state statutes. In fact, in some cases, Minnesota's choice-of-law principles require applying the *defendant's*, rather than the plaintiff's, home-state law. *See, e.g., Hudock I*, at \*8–9 (holding Minnesota's choice-of-law rules required the application of the law of defendants' home state instead of plaintiffs' home states). Here, DAP's misrepresentations originated and were disseminated from Maryland.

Second, DAP inaccurately asserts that "none of the conduct at issue took place in [Maryland]," when in fact, the majority of DAP's wrongdoing allegedly occurred in Maryland. DAP is headquartered in Maryland and was at all times relevant to this action operating its nationwide business from Maryland. (Compl. ¶ 7.) Additionally, the misconduct giving rise to Plaintiff's damages occurred in Maryland. DAP "heavily advertised" that the sealant product was "Crystal Clear" and that "[t]he Crystal Clear clarity allows the beauty of the surface to shine through the sealant." (*Id.* at ¶¶ 14–15.) From its headquarters, DAP directed that these false statements regarding the Sealant's clarity and coloration be placed prominently in advertisements, on its packaging, and in Technical Bulletins, intending for customers to rely on those misrepresentations and purchase the Sealant. (*Id.* at ¶ 47.) DAP furthermore disguised the Sealant's defect by devising a customer review incentive program, which was created and implemented at its headquarters, that offered customers free products in exchange for positive reviews. (*Id.* at ¶¶ 20–25.) This not only diluted the negative reviews and increased the overall product's rating, but it also made negative, and truthful, reviews less accessible to consumers. (*Id.*)

DAP's false advertisements and attempts to prevent customers from learning of the "Crystal Clear" Sealant's defects emanated from DAP's Maryland headquarters, which demonstrates the appropriateness of applying Maryland law here.[4] DAP's corporate

---

[4] Plaintiff's facts distinguish *Elyazidi v. SunTrust Bank,* Civil Action No. DKC 13-2204, 2014 WL 824129, at *8 (D. Md. Feb. 28, 2014), because here a significant portion of the challenged activity occurred in Maryland. In *Elyazidi*, the allegedly harmful conduct occurred in the forum state and the only connection to Maryland was that the Defendant conducted business there unrelated to plaintiff's injuries. *Id.*

headquarters, product development lab, and primary manufacturing plant are all located in Maryland,[5] and therefore Plaintiff plausibly alleges that the conduct at issue in this litigation emanated from Maryland.

## IV.     Plaintiff Has Adequately Alleged a Sufficient Causal Nexus and/or Reliance to Assert His Statutory Claims.

DAP's argument that Plaintiff's statutory consumer claims should be dismissed under Rule 12(b)(6) and Rule 9(b) misconstrues the requirements of these standards and should be denied.

In evaluating a motion under Rule 12(b)(6), "a court assumes all facts in the complaint to be true and construes all reasonable inferences most favorably to the complainant." *United States ex rel. Raynor v. Nat'l Rural Utils. Coop. Fin. Corp.*, 690 F.3d 951, 955 (8th Cir. 2012). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

DAP asserts that Plaintiff failed to plead his fraud-based claims with particularity under Rule 9(b). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The rule requires a

---

[5] *Building Moxie with DAP Products:: A Tour of DAP Product's Baltimore Facilities*, https://www.buildingmoxie.com/dap-products-tour/ (last visited December 10, 2020) (describing DAP's primary "Product Lab" in Baltimore as "responsible for product development and support for all of DAP's product lines" and DAP's Baltimore County manufacturing plant as the one in which sealant products are made).

plaintiff to "identify who, what, where, when, and how." *Streambend Props. II*, *LLC v. Ivy Tower Minneapolis, LLC*, 781 F. 3d 1003, 1013 (8th Cir. 2015) (quoting *United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F. 3d 818, 822) (8th Cir. 2009)). It must "specify[] the time, place, and content of the *defendant's* false representations, as well as the details of the *defendant's* fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Id.* (quoting *Hypoguard USA*, 559 F. 3d at 822) (emphasis added). The goal of Rule 9(b) "is fair notice," *City of Wyoming v. Procter & Gamble Co.*, Civil. No. 15-2101 (JRT/TNL), 2016 WL 5496321, at *6 (D. Minn. Sept. 28, 2016), and therefore, "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Streambend Props. II,* 781 F.3d at 1013 (citations omitted).

For fraud-based claims with reliance requirements, Courts have also required the reliance element be pleaded with particularity. *See Green v. Wells Fargo Bank, N.A.,* 927 F. Supp. 2d 244, 253 (D. Md. 2013) (requiring a plaintiff alleging a Maryland Consumer Protection Act claim to "show that they reasonably relied to their detriment on some promise or misrepresentation" made by the defendant). Courts have found that "[a] consumer relies on a misrepresentation when the misrepresentation substantially induces the consumer's choice" but that "[t]he quantum of evidence on which a fact-finder could reasonably conclude that an alleged misrepresentation substantially induces a consumer's choice is relatively low." *Bank of Am., N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 532 (D. Md. 2011).

### a. Plaintiff Has Sufficiently Pled a Causal Nexus Between Injury Suffered and Defendant's Conduct Under Rule 9(b).

Plaintiff has sufficiently pled reliance and a causal nexus between the alleged injury and the wrongful conduct, as required by his fraud-based claims in Counts I, IV, V, and VI. (*See* Mot. at 11). The Complaint alleges that "Plaintiff Ehlis purchased DAP Clear Sealant because of [DAP's] assertion that the Sealant was 'Crystal Clear.'" (Compl. ¶ 19.) The Complaint further alleges that Plaintiff would have not purchased the Sealant or would have paid less than he did had DAP disclosed the discoloration defect. (*Id.*).

Defendant argues that these allegations are insufficiently particular to meet Rule 9(b)'s standard for reasonable reliance, and subsequently concocts its own itemized particularity requirements. DAP's invented conception of "particularity" does not comport with courts' understanding of the requirements of Rule 9(b). Defendant's particularity wish list is comprise of factual issues properly explored in discovery rather than examined in a motion to dismiss. Moreover, DAP's cited authority does not support the requirements DAP seeks to impose. (See Mot. at 12–13.)

The Eighth Circuit has held that statutory fraud-based claims that have a reliance component do not require "direct evidence" of reliance to be pled in order to satisfy the causal nexus and reliance element of such claims. *See In re St. Jude Medical, Inc.*, 522 F.3d 836, 840 (8th Cir. 2008) (plaintiffs may not be required to present direct proof of individual reliance under Minnesota consumer fraud claims). Instead, proof of a causal nexus between a defendant's wrongful conduct and the alleged injury may be established by

"circumstantial evidence that the district court determines is relevant and probative as to the relationship between the claimed damages and the alleged prohibited conduct." *Id.*

In *Drobnak v. Andersen Corp.*, 561 F.3d 778, 784 (8th Cir. 2009), the court explained that "Rule 9(b) is deemed satisfied if the allegations are accompanied by a statement of facts on which the belief is founded." Notably, courts in this Circuit emphasize that Rule 9(b) is interpreted "in harmony with the principles of notice pleading" and "[t]his higher degree of notice 'is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." *Drobnak*, 561 F.3d at 783; *see also McGregor v. Uponor, Inc.*, No. 09-1136, 2010 WL 55985, at *3 (D. Minn. Jan. 4, 2010) ("Rule 9(b) does not require that the exact particulars of every instance of fraud be alleged, so long as the complaint includes enough detail to inform the defendant of the 'core' factual basis for the fraud claims."). Furthermore, requiring Plaintiff to allege the details that Defendant deems mandatory, such as how Plaintiff intended to use the Sealant, is not "essential", and would in no way materially affect Defendant's ability to mount a defense. *See Swearingen v. Late July Snacks LLC*, Case No. 13-cv-04324-EMC, 2017 WL 1806483, at *6 (N.D. Cal. May 5, 2017) (recognizing that certain details around plaintiffs' purchases, including the specific stores of purchase and exact dates of purchase were unnecessary in light of the purposes behind Rule 9(b)).

Applying Rule 9(b)'s actual requirements, Plaintiff has alleged its claims with particularity. The Complaint informs DAP of the nature and context of the alleged fraud by alleging the "who, what, where, when, why, and how." The Complaint sets out the "who": DAP made the assertion that its Sealant was "Crystal Clear" (Compl. ¶ 3.) The

17

Complaint sets out the "what": the advertisement, bulletins, labels, and the name of the product that state the Sealant is "Crystal Clear" (*Id.* at ¶ 3.) Plaintiff describes "where" the deceptive claims were made: on the Sealant's packaging, in its advertisements, and in the product's technical product bulletins, and in information DAP displays on its website (Compl. ¶ 4.) The "when" of the alleged fraud is within the alleged class period, August 31, 2014 to the present. (Compl. ¶ 16.) "How" DAP deceived consumers—including Plaintiff—was by falsely advertising the Sealant's coloration. (Compl. ¶ 53.) Finally, "why": Defendant placed the false statements about the Sealant intending that consumers would rely on those misrepresentations and purchase the Sealant. (Compl. ¶ 53.)

The Complaint also alleges that Plaintiff purchased the Sealant based on DAP's representations that it was "Crystal Clear" (Compl. ¶ 14); DAP advertised the product's coloration on its packaging as a feature of the product (Compl ¶¶ 16, 19); and Plaintiff and others similarly situated were injured because, but for DAP's representations, Plaintiff would not have purchased the Sealant or would have paid a lower price. (Compl. ¶ 19.) *See Hudock II*, at *4 (engaging in similar analysis and finding Rule 9(b) did not require dismissal of plaintiffs' fraud-based claims).

Plaintiff's allegations concerning when, where, and how Defendant made its misrepresentations are sufficiently particular without needing to list specific dates or times. *See, e.g., In re Polaris Mktg., Sales Practices, & Prods. Liab. Litig.*, 364 F. Supp. 3d 976, 988 (D. Minn. 2019) ("[C]ourts in this District repeatedly have concluded that allegations of fraud need not identify dates precisely."); *Axcan Scandipharm, Inc. v. Ethex Corp.*, 585 F. Supp. 2d 1067, 1084 (D. Minn. 2007) (determining a complaint sufficiently alleged

18

"when" by asserting the fraud was ongoing "since the late 1990's"); *Solvay Pharms., Inc. v. Glob. Pharms.*, 298 F. Supp. 2d 880, 885 (D. Minn. 2004) ("when" was satisfied by allegation that fraud was ongoing over several years). Plaintiff identifies a time period running from August 31, 2014 until the present and has presented DAP's actual labels and advertisements containing the misrepresentation. (Compl. ¶ 26.)

Plaintiff has sufficiently pled reliance with particularity and in a manner that courts have routinely found to be sufficient under Rule 9(b). *See, e.g., Block v. Toyota Motor Corp.*, 795 F. Supp. 2d 880, 890 (D. Minn. 2011) (reliance adequately pled where plaintiffs pled reliance on the grounds that a class representative would not have bought or driven a vehicle had Defendants made disclosures about known defects); *Tracton v. Viva Labs*, Inc., No.: 16-cv-2772, 2017 WL 4125053, at *5 (S.D. Cal. Sep. 18, 2017) ("It is enough for a plaintiff to plead that she would not have purchased the product absent the misleading advertising.").

Defendant argues that the Complaint fails to plead reliance with particularity because it does not precisely identify upon which of DAP's many misrepresentations Plaintiff relied. (*See* Mot. at 12.) However, "Rule 9(b) does not require such surgical precision." *McGregor v. Uponor, Inc.*, 2010 WL 55985, at *4, n.4 (citing *Carlson v. A.L.S. Enters., Inc.,* Civ. No. 07–3970, 2008 WL 185710, at *3 (D. Minn. Jan. 18, 2008) (citations omitted)). Instead, parties alleging fraud must plead "with sufficient particularity to state a plausible claim of justifiable reliance." *OmegaGenesis Corp. v. Mayo Found. For Med Educ. & Res.,* 851 F.3d 800, 805 (8th Cir. 2017). Plaintiff has plainly met that standard by

alleging he relied on DAP's promise that its "Crystal Clear" Sealant was actually clear and would not turn yellow after it was adhered.

In addition to explicitly asserting Plaintiff would have not purchased the Sealant but for Defendant's misrepresentation regarding the clarity, the Complaint sets out sufficient facts to show his reliance was justifiable. Plaintiff specifically alleges that Defendant's packaging and advertising falsely represented the color and clarity of the product as "Crystal Clear." (Compl. ¶ 47.) Plaintiff relied on Defendant's misleading statements about the Sealant's color and was injured when he purchased the product and ultimately turned yellow. (*Id.* ¶ 69.) Given the materiality of the product's promised color to both Plaintiff and other consumers, Plaintiff has sufficiently pled justifiable reliance. This Court should reject Defendant's Rule 9(b)-based arguments.

## V.   Plaintiff Has Adequately Pled His MDTPA Claim.

Plaintiff's MDTPA claim should survive because, despite DAP's assertions, Plaintiff has adequately alleged future likelihood of harm and explicitly requested injunctive relief in his complaint.

### a.   Plaintiff Has Alleged Likelihood of Future Harm Under the MDTPA.

Plaintiff has sufficiently alleged future harm under the MDTPA. "Plaintiff remains in the market for sealants; and there is no way for him to know when or if Defendant has ceased misrepresenting the clarity and coloration of DAP Clear Sealant products, and [] is therefore in danger of being harmed again." (Compl. ¶ 32.)  DAP argues that Plaintiff's MDTPA claim fails because Plaintiff is unlikely to be damaged as he is now aware of the

alleged defect. However, courts have determined allegations nearly identical to Plaintiff's here are sufficient at the pleading stage to survive a motion to dismiss because Plaintiff is a consumer who, in the future, may still be in the market for a Sealant like DAP's, particularly considering he now needs to replace his yellow sealant with clear sealant. *See Hudock II*, at \*6 (finding statements that "Plaintiffs remain in the market for televisions" provided a proper basis for Plaintiff's MDTPA claim) (citing *Masterson Pers., Inc. v. McClatchy Co.*, No. 05-1274, 2005 WL 3132349, at \*7 (D. Minn. Nov. 22, 2005); *see also Gardner v. First Am. Title Ins. Co.*, 296 F. Supp. 2d 1011, 1020–21 (D. Minn. 2003) (differentiating pleading a likelihood of future harm and proving that likelihood). Other circuits have held that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling" if she plausibly alleges "that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or that "she might purchase the product in the future, despite the fact that it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Davidson v. Kimberly-Clark Corp.,* 889 F.3d 956, 969–70 (9th Cir. 2018). The type of scenario contemplated by *Davidson* certainly is relevant to a product that is sold by specific color, only to change color days or weeks after application.

### b. Plaintiff Properly Requested Injunctive Relief for His MDTPA Claim.

Plaintiff also requested injunctive relief for his MDTPA claim in the Complaint. *See* Compl. Section B ("The Proposed Class Satisfies the Rules 23(b)(2) Prerequisites for Injunctive Relief")); Compl. ¶¶ 32–34 ("Defendant should be ordered to cease from using

further advertisements and product information that inaccurately states the clarity and coloration of DAP Clear Sealant.").

However, even if Plaintiff had not explicitly included injunctive relief as part of his Prayer for Relief, Federal Rule of Civil Procedure 54 is interpreted broadly to include such relief. Rule 54 provides that "every final judgment should grant the relief to which each party is entitled, even if the party had not demonstrated that relief in its pleadings." Fed. R. Civ. P. 54(c). "This provision has been liberally construed, leaving no question that it is the court's duty to grant whatever relief is appropriate in the case on the facts proved." *Baker v. John Morrell & Co*., 266 F. Supp. 2d 909, 929 (N.D. Iowa 2003) (internal quotation omitted); *accord Charles Schmitt & Co. v. Barrett*, 670 F.2d 802 (8th Cir. 1982). As expressly noted by the court in *Tuttle v. Lorillard Tobacco Co.*, "the DTPA is not the exclusive remedy for conduct falling within its scope." No. CIV991550, 2001 WL 821831, at *5 (D. Minn. July 5, 2001). Because Plaintiff has pled facts sufficient to state a claim for—among other things—fraudulent and deceptive practices in consumer transactions, the Complaint should not be dismissed just because Plaintiff did not explicitly name injunctive relief in the Prayer for Relief. Should the Court find the location of pleading injunctive relief a relevant and material point, Plaintiff seeks leave to amend his Complaint.

## VI.   Plaintiff Has Adequately Pleaded His Warranty Claims.

For the reasons outlined below, Plaintiff has adequately pleaded warranty claims under Minnesota and Maryland law.[6]

### a.   Plaintiff Provided DAP Pre-Suit Notice of His Warranty Claims.

---

[6] Plaintiff hereby withdraws his Magnuson Moss Warranty Act claim.

DAP's contention that "Plaintiff never provided DAP with notice of his warranty claims" is demonstrably false. Plaintiff sent a pre-suit notice letter to DAP via certified mail on July 28, 2020. (*See* Decl. of David A. Goodwin, Exhibit A (Letter from Plaintiff's counsel David A. Goodwin to DAP Re: "Claims of Brandon Ehlis under Minnesota and Maryland Law for Breach of Warranty")).

### b. Plaintiff's Maryland Express Warranty Claim Does Not Fail Due to a Lack of Privity.

The relationship between DAP and Plaintiff is sufficiently close to substitute for privity under Maryland law. Determining whether a relationship is sufficiently close "calls for the production of evidence of 'some conduct on the part of the [defendants] linking them to that party or parties, which evinces the [defendant's] understanding of that party's reliance.'" *Walpert, Smullian, & Blumenthal, P.A. v. Katz*, 762 A.2d 582, 598 (Md. 2000) (internal citation omitted). "The common denominator of the Maryland cases, where no contractual privity existed . . . is that in each case the relationship of the litigants was close enough that the defendant knew that the plaintiff was likely to take some action based on what the defendant said or did." *Simmons v. Lennon*, 773 A.2d 1064, 1079 (Md. Ct. Spec. App. 2001). Here, Plaintiff has adequately alleged facts that establish a sufficient nexus with Defendant to establish privity. *See Lawley v. Northam*, No. CIV.A. ELH-10-1074, 2011 WL 6013279, at *9 (D. Md. Dec. 1, 2011) (citing *Jacques v. First Natn'l Bank of Md.*, 515 A.2d 756, 759 (Md. 1986) ("This intimate nexus is satisfied by contractual privity *or its equivalent*.") (emphasis added). DAP's declarations demonstrate that it understands consumers, such as Plaintiff, may bring complaints about the performance of the product

directly to DAP and seek refunds from the company itself, instead of relying on home improvement stores, like Home Depot, as intermediaries. *See* Toth Decl. ¶¶ 5–6 (ECF 19). This evinces a sufficient substitute for privity for Plaintiff's express warranty claim.

Alternatively, Plaintiff may bring a claim for breach of express warranty as a third-party beneficiary. To qualify as a third-party beneficiary, the individual must show that the contract was "intended for his benefit" and "the parties intended to recognize him as the primary party in interest." *Dickerson v. Longoria*, 995 A.2d 721, 741 (Md. 2010) (internal quotation marks and alteration omitted); *Shillman v. Hobstetter*, 241 A.2d 570, 577 (Md. 1968) ("The face of the contract . . . indicates that the primary and direct benefit was intended for the contract purchasers."). Here, the express warranty in question was on the product packaging and was in fact targeting end-purchasers such as Plaintiff, indicating the end-consumer was the primary party in interest. Other courts have similarly reasoned *even where privity is generally necessary* for a breach of express warranty claim, privity is not required where "express warranties . . . were contained on the packaging and in the advertisements, both clearly directed toward the end-purchaser." *Karhu v. Vital Pharm., Inc.* No. 13-60768-CIV, 2013 WL 4047016, at *6 (S.D. Fla. Aug. 9. 2013).

### c. Coloration and Clarity Are Part of DAP's Express Warranty.

DAP cynically argues that despite marketing its Sealant in a variety of specific colors (though excluding a repellent shade of yellow), Plaintiff received what he bargained for because the product still seals. (Mot. at 17, 19–21.) Under Maryland law, an express warranty is created from a seller to a buyer by (a) "*any* affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the

bargain", or (b) "by *any description of the goods* which is made part of the basis of the bargain." (Md. Com. Law § 2-313) (emphasis added). DAP instead focuses solely on the "formal" express warranty contained on the back of the packaging of the Sealant, ignoring the fact that the Sealant's packaging and technical specifications plainly make an affirmation about the color and clarity of the Sealant, and describe the goods. (Compl. ¶ 16.) Defendant disregards the fact that Plaintiff's express warranty claim is premised on DAP's description of the product as "Crystal Clear" and ignores the many affirmations of fact and other product descriptions Plaintiff describes outside of the promises made in the "Lifetime Warranty." The Court should reject Defendant's argument to dismiss Plaintiff's express warranty claim. (*See* Mot. at 17–18.)

Moreover, the question of whether DAP's "Lifetime Guarantee" express warranty could be interpreted to cover discoloration is a factual issue that cannot be resolved at the Motion to Dismiss stage. The Complaint's allegations raise the issue of competing interpretations that are better left for a factfinder. (*See, e.g.*, Compl. ¶ 55) (discussing interpretation of DAP's "lifetime guarantee" that could include a reasonable understanding that coloration was included in its terms); *In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d 1071, 1080 (D. Minn 2010) ("Generally, whether a given representation constitutes a warranty is ordinarily a question of fact for the jury.") (internal quotations omitted). Therefore, the Court should reject DAP's argument to dismiss Plaintiff's express warranty claim on this ground as well.

### d. The Sealant's Coloration Is Part of the Ordinary Purpose for Which the Sealant Is Used.

DAP takes the counterintuitive position that the coloration and clarity of DAP "Crystal Clear" Sealant is not sufficiently tied to the product's core function as to form the basis for a breach of the implied warranty of merchantability. Both common sense and case law undermine this argument.[7]

An implied warranty of merchantability requires that goods be "fit for the ordinary purposes for which such goods are used." *Daigle v. Ford Motor Co.*, 713 F. Supp. 2d 822, 826 (D. Minn. 2010). An implied warranty of merchantability is breached when a "'product is defective to a normal buyer making ordinary use of the product.'" *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 860 (D. Minn. 2012) (quoting *Driscoll v. Standard Hardware, Inc.*, 785 N.W.2d 805, 816 (Minn. Ct. App. 2010)).

DAP's argument that the "Crystal Clear" Sealant still serves a sealing function is insufficient to preclude a breach of the implied warranty of merchantability. As one court analyzing a similar argument vividly noted, "the fact that person still may sleep on a moldy bed does not bar as a matter of law a claim for breach of the implied warranty of merchantability." *Stearns v. Select Comfort Retail Corp.*, Civ. A. No. 08–2746, 2009 WL 1635931, at *8 (N.D. Cal. June 5, 2009); *see also Isip v. Mercedes–Benz USA, LLC*, 65 Cal. Rptr. 3d 695, 700 (Cal. Ct. App. 2007) (rejecting the notion that a car is fit for its ordinary purpose merely because it can provide transportation and explaining that "[a]

---

[7] Defendant also makes an absurd and legally unsupported suggestion that coloration cannot be part of the ordinary purpose for which the "Crystal Clear" Sealant is used because the color is listed in a relatively smaller typeface than other product claims. (Mot. at 20.) There is nothing to suggest that a slightly smaller font size has any bearing on whether a particular defect renders a product unfit for the purpose for which that product is used.

vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose").

Furthermore, it is premature for the Court to determine as a matter of law at the motion to dismiss stage that the Sealant's color does not implicate a core function and other courts generally decline to do so at this stage. For example, in *Genesis Health Clubs, Inc. v. Led Solar & Light Co.*, No. 13-1269-JWL, 2014 WL 1246768, at *4 (D. Kan. Mar. 26, 2014), plaintiff claimed that the defendant breached the implied warranty of merchantability by selling lights that were not uniform in color. The court rejected the defendant's contention that color did not go to the "core" function of a light and declined to rule as a matter of law that a light's color did not implicate a core function. *Id.* Similarly here, Plaintiff alleges that DAP marketed, promoted, and sold the "Crystal Clear" Sealant with an emphasis on its coloration. (Compl. ¶¶ 14, 16.) Under the implied warranty of merchantability, the minimum quality required of a product with such an emphasis on the coloration "is one which the consumer expects to satisfy a certain aesthetic expectation." *Fleisher v. Fiber Composites, LLC,* No. 12-1326, 2012 WL 5381381, at *7 (E.D. Pa. Nov. 2, 2012) (finding a breach of the warranty of merchantability had been adequately pled where decking material exhibited "irremediable dark spotting" due to a product defect, despite not rendering the deck physically unusable); *see also LaPuma v. Collinwood Concrete*, 661 N.E. 2d 714, 716 (Ohio 1996) (plaintiff could maintain an action based on a theory of breach of implied warranty when plaintiff's claim was premised on the fact that the wrong color of concrete was used in their driveway).

Furthermore, customer complaints about DAP's Sealant make clear that normal buyers making ordinary use of the product believe the Sealant's severe discoloration make it worthless and necessary to replace. (*See, e.g.,* Compl. ¶ 18, at p. 8 ("This was a tremendous amount of work which will need to be redone."), p. 10 ("I used the 'clear' version of this stuff only to end up redoing all the work."), p. 13 ("4 months later had to dig it out. The Crystal Clear yellows and looks like crap.")). The color and clarity of the Sealant is part of the "ordinary purpose" for which it is used.

## VII.   Plaintiff Has Properly Alleged His Unjust Enrichment Claim.

DAP asserts Plaintiff's unjust enrichment claim is unavailable where there is an adequate legal remedy. (Mot. at 24.) However, Courts in this district have denied dismissal of unjust enrichment claims pleaded with other claims for which there is a legal remedy where Plaintiffs state "a plausible alternative claim for unjust enrichment." *North Central EMS Corp. v. Bound Tree Med.*, No. 15-2793 (JRT/LIB), 2016 WL 544472, at *9 (D. Minn. Feb. 10, 2016); *see also In re Levaquin Prods. Liab. Litig.*, 752 F. Supp. 2d at 1081 (analyzing rationale for allowing equitable claims to be pled in the alternative); *Hudock II* at *8 (recognizing the District of Minnesota has had numerous occasions to address the issue and has held that it will not dismiss a plausible alternative claim for unjust enrichment). Here, Plaintiff has alleged legal claims and also an equitable claim of unjust enrichment.

Defendant also challenges Plaintiff's unjust enrichment claim on the grounds that Plaintiff could avail himself of DAP's refund policy, and therefore—had Plaintiff taken up DAP on its purported refund policy that was never actually offered to him—DAP would

not have been enriched. This argument fails for the reasons set out in great detail *supra* Section I. Defendant does not challenge Plaintiff's unjust enrichment claims on other substantive grounds.[8] Accordingly, the Court should disregard DAP's argument to dismiss Plaintiff's unjust enrichment claims.

## VIII.   Plaintiff's Claims Are Not Time-Barred.

Defendant prematurely and incorrectly argues that the statute of limitations bars Plaintiff's claims. The question of whether the statute of limitations has run is not appropriate for resolution on Defendant's Motion to Dismiss. *Smith v. Questar Capital Corp.*, No. 12-cv-2669 (SRN/TNL), 2013 WL 3990319, at *10 (D. Minn. Aug. 2, 2013) (citing *Joyce v. Teasdale*, 635 F. 3d 364, 367 (8th Cir. 2011). As a general rule, "the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." *Id*. (citing *Jessie v. Potter*, 516 F. 3d 709, 713 n.2 (8th Cir. 2008)). Here, the Complaint does not establish this defense because nothing Plaintiff alleges suggests his claim is time barred. (*See* Compl. ¶ 6.) It is therefore inappropriate at this stage to ask the Court to resolve the statute of limitations issue.

Here again, DAP's argument relies on making factual assumptions outside the Complaint. (Mot. at 25) (insisting that the Complaint did not sufficiently establish when Plaintiff purchased the "Crystal Clear" Sealant and so his claim must be time-barred). As discussed in greater depth in Section IV, Plaintiff alleged the "when" of DAP's alleged

---

[8] Defendant does argue that the unjust enrichment claim is time barred, but this argument fails as discussed in Section VIII *infra*.

fraud with sufficient particularity under Rule 9(b), and nothing in those allegations time bars Plaintiff's claim on its face. Moreover, DAP makes the argument that the limitations period bars Plaintiff's claims without the benefit of discovery. The specific time and circumstances in which Plaintiff first discovered DAP's wrongdoing is indisputably a fact issue that cannot be resolved by DAP's Motion. The issue of what Plaintiff knew, when he knew it, what he should have (or could have) discovered, and when, remain fact-intensive inquiries, requiring discovery and weighing by the trier of fact. *See Highway Sales Inc. v. Blue Bird Corp.*, 559 F.3d 782, 799 (8th Cir. 2009) (Beam, J., concurring and dissenting) (citing *Ciardelli v. Rindal*, 582 N.W.2d 910, 912 (Minn.1998)) (the "statute of limitations affirmative defense is [] a question of fact for the jury.").

DAP also fails to set aside the argument that it should be estopped from asserting a statute of limitations defense. (Mot. at 26–27.) As alleged in the Complaint, DAP knew about the Sealant's yellowing defect at least as early as 2012. (Compl. ¶ 18.) Accordingly, DAP knew or reasonably should have known that the Crystal Clear Sealant was defective before its sale during the class period. Plaintiff alleged facts supporting his allegation that DAP orchestrated a campaign to intentionally mislead consumers and concealed material truths concerning its Sealant's color by diluting negative customer reviews. Despite knowing of the Sealant's discoloration, DAP continued to falsely represent that the Sealant was "Crystal Clear" and fit for its intended use. (*See* Compl. ¶¶ 20–25.) Defendant's acts of fraudulent concealment also include, but are not limited to, using improper tactics to mislead consumers' expectations to obscure the true nature of DAP Clear Sealant's coloration defect. *Id.*

For these reasons, the Court should not dismiss Plaintiff's complaint on statute of limitations grounds.

## Conclusion

For the reasons stated above, the Court should deny Defendant's Motion to Dismiss in its entirety.

Dated:   December 11, 2020

Respectfully submitted,

*/s/ David A. Goodwin*
Daniel E. Gustafson (MN Lic. #202241)
Daniel C. Hedlund (MN Lic. #258337)
David A. Goodwin (MN Lic. #0386715)
Kaitlyn L. Dennis (MN Lic. #0397433)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com
dgoodwin@gustafsongluek.com
kdennis@gustafsongluek.com

Brian C. Gudmundson (MN Lic. #336695)
Michael J. Laird (MN Lic. #398436)
Rachel K. Tack (MN Lic. #399529)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
brian.gudmundson@zimmreed.com
michael.laird@zimmreed.com
rachel.tack@zimmreed.com

***Counsel for Plaintiff***