UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Brandon Ehlis, on behalf of himself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>DAP Products, Inc.,<br><br>        Defendant. | Case No. 20-cv-01872-PJS-ECW<br><br>**REPLY IN SUPPORT OF DEFENDANT DAP PRODUCTS INC.'S MOTION TO DISMISS** |

## INTRODUCTION

Plaintiff's Opposition (ECF No. 26, "Opposition") essentially ignores the extensive Minnesota authority set out in Defendant's Memorandum (ECF No. 17, "Motion"). Instead, the Opposition relies on (a) cases from other jurisdictions, that are often decades old, with facts and even holdings rendering them irrelevant to Plaintiff's claims; and (b) counsel's representations regarding facts that are noticeably absent from the Complaint.

Ultimately, Plaintiff cannot escape the simple facts that the Complaint does not allege that the operative events occurred in Maryland (thus precluding application of Maryland law); that Plaintiff purchased the Sealant or was injured in Minnesota (thus precluding personal jurisdiction); that there is any nexus between the alleged misrepresentation and any injury suffered by Plaintiff; or that Plaintiff has satisfied the requirements of his other claims.

# ARGUMENT

## I. THE COMPLAINT PLEADS NO FACTS SUPPORTING PERSONAL JURISDICTION.

The Opposition clarifies that Plaintiff asserts specific personal jurisdiction. Opp. at 7-8. A court has specific jurisdiction when the defendant's contacts with the forum state caused the injury at issue. *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., S. F. Cnty.*, 137 S. Ct. 1773, 1780 (2017). The Complaint does not satisfy this standard. *See* Motion at 5-7.

The cases on which the Opposition relies, *see* Opp. at 9-10, were decided before the seminal *Bristol-Myers* case, and in any event do not salvage the Complaint's inadequacy. Consistent with *DAP's* position, both *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 945 (8th Cir. 1998), and *Safco Prods. Co. v. WelCom Prods., Inc.*, 730 F. Supp. 2d 959, 965 (D. Minn. 2010), found personal jurisdiction *in the states where the plaintiff's injuries were suffered*. And *Cambria Co., LLC v. Pental Granite & Marble, Inc.*, Civil No. 12-cv-228 (JRT/AJB), 2013 WL 1249216 (D. Minn. Mar. 27, 2013), hinged on detailed findings regarding the defendant's dispute-specific contacts with Minnesota; specifically, that the defendant "specifically [advertised] that [its] products were available in Minnesota, thereby directing them at Minnesota residents," *id.*; that the defendant's website provided that "it [wa]s operated by [the defendant] from its place of business within Minnesota," and that "[a]ny claims relating to the information available on this website will be governed by the laws of the State of Minnesota." *Id.* at *2, *7, *8. The Complaint contains no such allegations.

Ultimately, the Opposition tacitly admits that the Complaint lacks allegations supporting specific jurisdiction, representing instead that Plaintiff is able amend his Complaint to allege that:

> (1) Plaintiff resides in Minnesota; (2) DAP advertises, markets, and sells the Sealant in Minnesota; (3) Plaintiff purchased the Sealant in Minnesota; (4) Plaintiff applied the Sealant in his home in Minnesota; (5) the Sealant turned from clear upon application to yellow shortly thereafter in Plaintiff's Minnesota home; (6) Plaintiff suffered injury-in-fact in Minnesota; and (7) DAP's misconduct in Minnesota directly and proximately caused Plaintiff's damages.

Opp. at 11. Those are precisely the types of allegations routinely found in complaints asserting specific jurisdiction.[1] Although Plaintiff claims he *could* make such allegations, the fact is that he simply has not. Counsel's assurances are not cognizable. To survive a Rule 12(b)(2) motion, "[Plaintiff] must make a prima facie showing that personal jurisdiction exists." Motion at 5, quoting *In re Mun. Stormwater Pond*, 429 F. Supp. 3d 647, 652 (D. Minn. 2019). Plaintiff has not done so.

## II. PLAINTIFF LACKS STANDING BECAUSE HE FAILED TO AVAIL HIMSELF OF A COMPLETE REFUND.

Pre-litigation availability of a remedy that would satisfy a plaintiff's claims moots the controversy and precludes standing. *See* Motion at 3-5. The Opposition argues DAP never made such a pre-litigation offer. *See* Opp. at 3-7. To the contrary, a refund was always available. *See* Motion at 4-5.

---

[1] DAP's counsel made these points in the parties' meet and confer, but Plaintiff declined to amend his Complaint and forced this motion. The Court should not reward Plaintiff with leave to amend in these circumstances.

Plaintiff asserts DAP's argument is negated by DAP's non-response to a pre-litigation notice letter. *See* Opp. at 5-7. But that letter did not focus on a refund for Mr. Ehlis, it sought far-reaching remedies for the class action Plaintiff's counsel clearly intended to file, including that DAP: (1) somehow identify *all* "current and former" purchasers of the Sealant; (2) notify such customers of the alleged defect; (3) provide reimbursement to all purchasers for consequential costs; (4) cease selling the Sealant; and (5) escrow money for Plaintiff's attorneys' fees and costs.[2] *See* Opp. Decl. of David A. Goodwin, Attachment A (ECF No. 27-1). In fact, *the letter does not even state that Mr. Ehlis experienced any problem with the Sealant*; it only generally alleges that the Sealant yellows.[3] *Id.* If the letter had stated that Mr. Ehlis had experienced a problem with his Sealant, he would have received a full refund. The letter simply did not.

The Opposition's further argument that Plaintiff has standing by virtue of alleged ongoing misrepresentation, *see* Opp. at 7, is also incorrect. Such speculative future injuries cannot provide standing. *See, e.g.*, *Clapper v. Amnesty Intern. USA*, 133 S. Ct. 1138, 1147 (2013) ("[a]llegations of *possible* future injury are not sufficient") (emphasis in original).[4]

---

[2] Most of these demands are not included in the Complaint. *See Compl.*, Prayer for Relief.

[3] The absence of any statement in the letter that Mr. Ehlis had been harmed is consistent with the Complaint's glaring failure to allege these and other elemental facts. *See* Motion at 12-13.

[4] *Hudock v. LG Elecs. U.S.A., Inc.*, Civil No. 16-1220 (JRT/FLN), 2017 WL 1157098, (D. Minn. Mar. 27, 2017), cited in the Opposition, does not hold otherwise; it expressly "defer[red] consideration of the standing issues until after class certification." *Id.* at *2.

### III. PLAINTIFF HAS NO BASIS TO ASSERT CLAIMS UNDER MARYLAND LAW.

The Opposition asserts that the operative conduct—Plaintiff's alleged purchase of the Sealant, application of the Sealant, and alleged injury—occurred in *Minnesota*. *See* Opp. at 11. As DAP's Motion explains, this means that there is no basis to apply *Maryland* law to Plaintiff's claims. *See* Motion at 8-10.

The Opposition counters that it would be permissible to apply Maryland law because, according to the Opposition, "the majority of DAP's wrongdoing allegedly occurred in Maryland"; specifically, that "*[f]rom its headquarters*, DAP directed" the allegedly misleading statements." Opp, at 13 (emphasis added). The allegation that this or any other directive was issued "from [DAP's] headquarters" does not appear in the Complaint. The Opposition's claim that it does is simply false. Contrary to the Opposition's representations, the Complaint does not make *any* allegations regarding *any* conduct occurring in Maryland. The Complaint's only reference to Maryland is that "DAP Products, Inc. is a Delaware corporation headquartered in Baltimore, Maryland." Compl. ¶ 7. On a motion to dismiss, factual allegations in the *complaint* are taken as true. But the factual basis for the Opposition's argument appear nowhere in the Complaint; they are counsel's *ipse dixit*.[5]

Even if the Court accepted the Opposition's unsubstantiated allegations, Plaintiff's argument fails. The argument amounts to the assertion that in a consumer protection

---

[5] Corporations often have offices in multiple states from which they make various decisions and take various actions; the Complaint provides no support for the Opposition's assertions that DAP made marketing or other decisions in Maryland.

5

lawsuit a court may always apply the law of the state where the defendant's headquarters is located. This is clearly wrong. Case after case holds that the laws of the state of a defendant's headquarters do *not* apply when the alleged purchase and injury occurred elsewhere. *See* Motion at 8-10. "Generally, state consumer protection statutes do not provide relief to out-of-state consumers for an out-of-state consumer transaction," regardless of where the defendant's headquarters is located. *Steinbeck v. Dollar Thrifty Auto. Group, Inc.*, No. 08-CV-0378-CVE-PJC, 2008 WL 4279798, at *3 (N.D. Ok. Sept. 15, 2008) (collecting cases).

*Ferrari v. Best Buy, Inc.*, No. 14-2956 (MJD/FLN), 2015 WL 2242128, at *9 (D. Minn. May 12, 2015), involved the same fact pattern as here. The plaintiff alleged misrepresentation in connection with his purchase of a television in Massachusetts from Best Buy. *Id.* at *10. The plaintiff asserted claims under Minnesota's MCFA and UDTPA, based on the location of Best Buy's corporate headquarters in Minnesota. *Id.* at *4. This Court dismissed those claims, holding that "[n]amed plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury." *Id.* at *9 (collecting cases).

*Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931 (D. Minn. 2020), is the same. Even though the defendant had designed, manufactured, and tested the product in Minnesota; received consumer complaints and warranty claims in Minnesota; and was headquartered in Minnesota, the court held that the law of each plaintiff's home state must apply because "[t]he location of a defendant's headquarters, by itself, is not enough to apply the law of that state," and, therefore, "it would be arbitrary and fundamentally

6

unfair to apply the MCFA to [plaintiffs who purchased the product outside Minnesota]." *Id.* at 962-63.

The Opposition all but ignores this extensive authority.[6] Instead it relies on three cases. *See* Opp. at 12. The four decade old *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313-15 (1981), case reached the unsurprising conclusion that application of Minnesota law to an auto insurance claim was not unconstitutional where the decedent policyholder worked in Minnesota, regularly commuted to Minnesota, and where the plaintiff was a Minnesota resident. *Hudock*, 2020 WL 1515233, at *8-9, is based on the finding that "[v]irtually all of the corporate acts implicated by each claim occurred in Minnesota," *id.* at *8; and in any event is in the extreme minority regarding application of a single state's consumer protection law in a national class action.[7] Finally, *In re Equifax, Inc. Cust. Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1178–79 (N.D. Ga. 2019), squarely supports *DAP's* position, not Plaintiff's. *Equifax* held that even assuming the defendants' relevant conduct occurred entirely in the defendants' home state of Georgia, it was appropriate to apply the consumer protection laws of the particular non-Georgia states where each plaintiff was injured. *Id.*

---

[6] The Opposition mentions only one of the cases cited in the Motion (in a footnote), *Elyazidi*. Contrary to the Opposition's characterization, as *Elyazidi* unambiguously holds that the MCPA does not apply where the harm occurred outside Maryland.

[7] *See Hale v. Emerson Elec. Co.*, 942 F.3d 401 (8th Cir. 2019) ("Class members encountered the allegedly misleading advertising, purchased a vacuum, and ultimately were disappointed with its performance, all in their home states.… The consumer protection law of each class member's home state governs each consumer protection claim and class certification is inappropriate as to those claims."); *Johannessohn,* 450 F. Supp. 3d at 966.

7

## IV. THE COMPLAINT FAILS TO ESTABLISH THE CAUSAL NEXUS REQUIRED FOR PLAINTIFF'S STATUTORY CONSUMER CLAIMS.

Confronted with the Complaint's failure to allege facts demonstrating the causal nexus required for Plaintiff's statutory consumer claims, *see* Motion at 11-13, all the Opposition is able to muster is the conspicuously vague allegation that "Plaintiff Ehlis purchased DAP Clear Sealant because of [DAP's] assertion that the Sealant was 'Crystal Clear.'" *See* Opp. at 16 (quoting Compl. ¶ 19).

The Opposition argues that this single allegation is sufficient, and that "the exact particulars," of the causal nexus and reliance need not be alleged with "surgical precision." *Id.* at 17, 19. This is a straw man. DAP's position is far more modest: more is required than the Complaint's single, conclusory allegation. Some *facts* demonstrating that the "crystal clear" representation mattered to Plaintiff's purchase decision and caused some harm must be alleged; for example, that Plaintiff saw the representation before his purchase and that it influenced his purchase decision; to what extent Plaintiff experienced the alleged yellowing; and whether that yellowing was even visible based, for example, on where he applied the Sealant. *See* Motion at 12-13.

The Opposition's retort that such issues are "properly explored in discovery," Opp. at 16, is puzzling. Such facts—if they exist at all—are entirely and uniquely in Plaintiff's possession. There is no need for Plaintiff to conduct any discovery. Such facts are routinely alleged in consumer fraud complaints, as required by Rule 9(b). *See* Motion at 12-13. Notably, the Opposition elsewhere shows no reluctance to introduce matters outside the Complaint. *See* Opp. at 6, 11; Opp. Ex. A. That it does not do so on this point

8

is telling. The clear implication is that Plaintiff did not see or rely on the alleged misrepresentation and thus could not have suffered any injury as a result. Compliance with even a forgiving interpretation of Rule 9(b) would definitively address the issue. Plaintiff's failure to allege these facts is dispositive.

The cases the Opposition cites, Opp. at 17-19, are not to the contrary. *Swearingen v. Late July Snacks LLC*, Case No. 13-cv-04324-EMC, 2017 WL 1806483, (N.D. Cal. May 5, 2017), undermines Plaintiff's position, holding that "fail[ure] to allege … whether [plaintiffs] were personally exposed to the alleged misrepresentations"—as the Complaint fails to do here—would have violated Rule 9(b). *Id.* at *6. *Drobnak v. Andersen Corp.*, 561 F.3d 778 (8th Cir. 2009), applies to allegations made on information and belief "[w]hen the facts constituting the fraud are peculiarly within the opposing party's knowledge," *id.* at 783; it therefore has no bearing here. And *In re Polaris Mktg., Sales Practices, & Prods. Liab. Litig.*, 364 F. Supp. 3d 976, 988 (D. Minn. 2019), held that Rule 9(b) was satisfied where plaintiffs alleged that they "researched Defendants' products before purchasing their vehicles. This research included reviewing Defendants' promotional materials, website, and commercials." The Complaint does not allege Plaintiff took any such actions.

None of the other cases support the Opposition's contention that the Complaint's single, conclusory allegation of causal nexus is sufficient. For example, *Tracton v. Viva Labs*, *Inc.*, held that rule 9(b) was satisfied where a complaint alleged that when making her purchase, the plaintiff "read and relied on the representations made on the product's label, as well as on the Amazon product page;" No.: 16-cv-2772, 2017 WL 4125053, at

\*6 (S.D. Cal. Sep. 18, 2017); and that these representations led plaintiff to believe that the defendant's product was healthier than other alternatives, *id.* at \*1. Similarly, *McGregor v. Uponor, Inc.*, Civil No. 09-1136 ADM/JJK, 2010 WL 55985, at \*4, n.4 (D. Minn. Jan. 4, 2010), found that Rule 9(b) was satisfied where—unlike here—the complaint affirmatively alleged that the interested parties "received and relied upon the allegedly fraudulent conduct when deciding to purchase [the products at issue]." These are precisely the type of allegations that DAP argues are missing from Plaintiff's Complaint.

## V. THE COMPLAINT FAILS TO PLEAD A MDTPA CLAIM.

### A. The Complaint does not plead a likelihood of future harm.

Once a consumer is aware of deceptive advertising, she cannot satisfy the requirement that she is "*likely to be damaged* by a deceptive trade practice" in the future, because her awareness makes it unlikely she will be deceived. *Indep. Glass Ass'n v. Safelite Group, Inc.*, No. Civ. 05–238ADMFLN, 2005 WL 3079084 (D. Minn Nov. 16, 2005) (emphasis in original); *see also Bhatia v. 3M Co.*, 323 F. Supp. 3d 1082, 1097 (D. Minn. 2018); *Johnson v. Bobcat Co.*, 175 F. Supp. 3d 1130, 1141 (D. Minn. 2016).

The Opposition ignores this uniform authority. The cases it advances instead, *see* Opp. at 21, are unavailing. *Davidson v. Kimberly–Clark Corp.*, 889 F.3d 956 (9th Cir. 2018), focused on *California's* consumer statutes, not Minnesota's. Moreover, unlike here, the complaint in *Davidson* specifically alleged that the plaintiff "continues to desire to purchase [the product]," "regularly visits stores ... where [the defendant's products] are sold," and "is continually presented with [defendant's products'] packaging but has no way of determining whether the representation [at issue] is in fact true." *Id.* at 970-71.

10

Even with those extensive allegations, the Ninth Circuit found that the issue was "a close question." *Id.* at 971. *Gardner v. First Am. Title Ins. Co.*, 296 F. Supp. 2d 1011, 1020–21 (D. Minn. 2003), granted summary judgment for defendant where the plaintiff failed to prove a likelihood of future harm. And *Masterson Pers., Inc. v. McClatchy Co.*, No. 05-1274, 2005 WL 3132349 (D. Minn. Nov. 22, 2005), involved an ongoing business relationship; namely, the defendant newspaper "inflat[ed] and manipulate[ed] circulation figures used to set advertising rates," *id.* at *1, where plaintiffs "continue[d] to use and pay for [the defendant's] advertising services." *Id.* at *7.

The Complaint makes no such allegations. Plaintiff relies exclusively on the vague assertion that he "remains in the market for sealants." Compl. ¶ 32; *see also* Opp. at 20. The Opposition is able to point to only a single, outlying case—*Hudock*—suggesting that such a flimsy and implausible allegation is sufficient. The great weight of authority compels dismissal.

### B. The MDTPA claim must be dismissed because the Complaint does not seek injunctive relief.

The MDTPA allows only injunctive relief. *See* Motion at 14. The Complaint's Prayer for Relief seeks only monetary relief. Compl. at 30-31. Tacitly admitting this defect, the Opposition argues that one of the Complaint's general allegations regarding the request for class certification under Rule 23(b)(2) suffices—that "Defendant should be ordered to cease from using further advertisements and product information that inaccurately states the clarity and coloration of DAP Clear Sealant." *See* Opp. at 21-22. This Court has found that the virtually identical request for injunctive relief is

11

insufficient. *See Johnson*, 175 F. Supp. 3d at 1141 (dismissing claim where the requested injunction was simply "prohibiting [defendant] from falsely advertising the qualities, characteristics, and capabilities of the [product]"). The Opposition suggests no basis for deviating from that authority.

## VI. PLAINTIFF'S BREACH OF WARRANTY CLAIMS FAIL.

### A. Plaintiff's notice was insufficient.

The Opposition acknowledges that pre-suit notice is required for his warranty claims. *See* Motion at 15. The Opposition asserts that such notice was provided through an affidavit from counsel attaching a letter. This argument fails for three reasons.

#### 1. *The notice is outside the pleadings.*

A court's consideration of a motion to dismiss is limited to the facts alleged in the complaint and facts that are judicially noticed. *See, e.g.*, *Podraza v. Whiting*, 790 F.3d 828, 833 (8th Cir. 2015). The letter is not mentioned in the Complaint and counsel's affidavit cannot convert it into the type of "fact that is not subject to reasonable dispute" that qualifies for judicial notice. Fed. R. Evid. 201(b); *Leventhal v. Tomford*, No. 18-cv-0320 (ECT/KMM), 2018 WL 10561507, *1 (D. Minn. Dec. 26, 2018). This is particularly true because, as discussed below, DAP disputes the date of the letter. Without the letter, Plaintiff's argument fails.

#### 2. *The notice did not give DAP the requisite opportunity to cure.*

Even if the letter is considered, it did not provide DAP the requisite opportunity to cure. "One of the primary reasons for the notification requirement is that it provides …

12

opportunity to correct the[ ] original performance and avoid costly litigation." *Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 542 n.4 (D. Md. 2011).

The content of the letter demonstrates that it is not an invitation to cure. The letter does not indicate when Plaintiff purchased the Sealant, how he used it, or what injury he suffered, if any. *See Doll*, 814 F. Supp. 2d at 542 (plaintiffs must "set forth the nature of the nonconformity"). Nor does the letter even attempt to show that Plaintiff complied with the warranty conditions. *See* Motion at 17-18.

The letter's demands are exceptionally far reaching. *See* page 4, *supra*; ECF No. 27-1 at 2. Plaintiff filed the Complaint without allowing DAP a reasonable time to consider them and respond. Although the letter is *dated* July 28, 2020, DAP did not receive the letter until between August 17 and August 21, 2020.[8] *See* Decl. of L. Austin ¶¶ 8-10. Notably, although Plaintiff's counsel's declaration represents that the letter was sent to DAP by certified mail, the Opposition's exhibit does not include the return receipt and the declaration does not state the date when the letter was actually sent. *See* Opp. Ex. A at ¶ 5. The Complaint was filed on August 31, 2020, only fourteen days (or fewer) after DAP received the letter. *See* ECF No. 1. Fourteen days (or even 34 days, if the letter had been received on July 28) is insufficient time for DAP to have considered the letter's broad demands. The letter is therefore ineffective. *See Stearns v. Select Comfort Retail Corp.*, Civ. A. No. 08-2746, 2009 WL 1635931, at *4 (N.D. Cal. June 5, 2009) (holding

---

[8] DAP rescinds its earlier argument that it did not receive pre-suit notice. At the time of its Motion to Dismiss, DAP was very early in its investigation of the facts. Counsel had not yet become aware that any notice had been given.

three days' notice is not sufficient opportunity "for [d]efendants to address the issue properly before [plaintiff] filed suit").

### 3. *Plaintiff fails to plead his notice was timely.*

Notice of a warranty claim must be provided "within a reasonable time after [a plaintiff] discovers or should have discovered any breach." *Palmer v. CVS Health*, No. CCB 17-938, 2019 WL 6529163, at *6 (D. Md. Dec. 4, 2019) (quoting Md. Code Ann., Com. Law § 2-607(3)(a)).

The Complaint alleges Plaintiff purchased the Sealant potentially as long ago as August 31, 2014. Compl. ¶¶ 6, 26. Plaintiff's notice letter was sent almost *six years* later. Notice six years after purchase is not timely. *See Liberty Steel Prods., Inc. v. Franco Steel Corp.*, 57 F. Supp. 2d 459, 469 (N.D. Ohio 1999) (finding notice given ten to twelve months after plaintiff ought to have known about breach was not timely).

### B. **There is no privity or actionable substitute between Plaintiff and DAP.**

The Opposition's argument that privity is satisfied because "[t]he relationship between DAP and Plaintiff is sufficiently close to substitute for privity under Maryland law," Opp. at 23, is incorrect. Plaintiff purchased the Sealant from Home Depot. *See* Compl. ¶ 6. There is nothing exceptional or unusual about Plaintiff's "relationship" with DAP. There is no indication that Plaintiff and DAP had *any* interaction prior to this dispute. Every day, millions of consumers enter into the identical "relationship" with manufacturers. Accepting the Opposition's argument would effectively eviscerate the privity requirement entirely as to consumer transactions.

14

The Opposition articulates vague standards ("sufficiently close," "sufficient nexus") for side-stepping Maryland's privity requirement and—virtually without analysis—claims Plaintiff has met those standards. *See* Opp. at 23-24. But the relationship between Plaintiff and DAP is nothing like the Opposition's cases.

For example, *Walpert, Smullian, & Blumenthal, P.A. v. Katz*, 762 A.2d 582 (Md. 2000), found that an accountant may be liable for negligence when it performed work for a third party, but: the accountant met plaintiff face-to-face several times, knew plaintiff would be relying on its audits in deciding whether to make sizeable loans to the audited entity, expressly discussed the loans with plaintiff, and personally provided plaintiff with copies of the financial statements it drafted. *Id.* at 585, 608-09. In *Lawley v. Northam*, No. CIV.A. ELH-10-1074, 2011 WL 6013279 (D. Md. Dec. 1, 2011), the defendant sold a home to the plaintiffs' mother. The home proved to have a series of unhealthy defects, including mold, asbestos, and water contamination. *Id.* at *3-4. The defendant asserted it owed no duty to disclose the defects to plaintiffs since plaintiffs were not the purchasers. The court disagreed on the basis that defendants "interacted solely with the [plaintiffs] and knew that they were the ones who intended to occupy the premises." *Id.* at *10. The difference between *Walpert* and *Lawley* on the one hand, and the run-of-the-mill consumer purchase in case at bar on the other, is night and day.

The Opposition's argument that Plaintiff is a third-party beneficiary, *see* Opp. at 24, is equally meritless. Under Maryland law, third-party beneficiaries may only avail themselves of a warranty if they suffer personal injury. *See* Motion at 16, n.6. The Opposition's cases do not support any exception to this clear rule.

15

### C. Color is not part of the Sealant's core function.

A breach of implied warranty claim must plead "impairment of the core functionality" of a product, and that impairment "must be so fundamental as to render the product unfit for its ordinary purpose." *See* Motion at 18-20 (quoting *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1108 (N.D. Cal. 2015)).

As is its practice, the Opposition ignores all of the authority discussed in the Motion. In contrast to Plaintiff's nebulous claims of "yellow[ing]" of the Sealant to an unspecified degree, in an unspecified (possibly hidden or not visible) location, the Opposition's cases involve much more serious and extensive defects. *Stearns,* 2009 WL 1635931, at *8, involved beds that developed potentially unhealthy mold. *Isip v. Mercedes–Benz USA, LLC*, 65 Cal. Rptr. 3d 695 (Cal. Ct. App. 2007), involved a Mercedes that had such extensive defects that it was almost unusable, including that it "emitted an offensive smell every time it was turned on, giving [plaintiff] a headache," unexpected and disconcerting loud noises, unsafe gear shifts, fluid leaks, and smoke from the exhaust. *Id.* at 696. *Fleisher v. Fiber Composites, LLC,* No. 12-1326, 2012 WL 5381381(E.D. Pa. Nov. 2, 2012), involved deck materials with a latent defect that "caused fungal growth and ugly spotting that rendered it unfit for ordinary use as decking material." *Id.* at *7. Finally, in *LaPuma v. Collinwood Concrete,* 661 N.E. 2d 714 (Ohio 1996), the plaintiff "special[ly] request[ed]" "chocolate brown" pavement from defendant when re-paving his driveway, but the concrete was defective and became discolored. *Id.* at 715.

Plaintiff's claims align with the cases cited in the Motion rather than the considerably more significant defects in the Opposition's cases. The Complaint does not allege facts supporting a finding that the alleged yellowing impairs the core functionality of the Sealant—to seal—and thus does not state a claim for breach of implied warranty.[9]

**VII. PLAINTIFF CANNOT ASSERT A CLAIM FOR UNJUST ENRICHMENT BECAUSE HE HAS AN ADEQUATE REMEDY AT LAW.**

Although some Minnesota courts have held that an unjust enrichment claim may be pled in the alternative to legal claims, many Minnesota cases find that claims for unjust enrichment may be dismissed where a valid contract governs the dispute. *See Watson's Props., LLC v. Menard, Inc.*, No. C0-01-2085, 2002 WL 1364064, at *3 (Minn. Ct. App. June 19, 2002) (affirming dismissal because "unjust enrichment … cannot be granted where the rights of the parties are governed by a valid contract.") (internal citation and quotation marks removed); *Martin v. A'BULAE, LLC*, No. A15-1993, 2016 WL 3659293, at *5 (Minn. Ct. App. July 11, 2016); *Colangelo v. Norwest Mortg., Inc.*, 598 N.W.2d 14, 19 (Minn. Ct. App. 1999).

DAP does not argue that the agreement governing Plaintiff's purchase of the Sealant—a contract implied by the purchase of any good under Article II of the UCC—is invalid. Plaintiff's unjust enrichment claim therefore fails as a matter of law and should be dismissed.

---

[9] The Opposition offers no reason to believe Plaintiff satisfied the conditions of the express warranty. *See* Motion at 17-18. This too mandates dismissal.

17

### VIII. PLAINTIFF'S CLAIMS ARE TIME-BARRED.

Plaintiff's artful pleading to avoid specifying when the operative conduct occurred violates Rule 9(b) and cannot shield his time-barred claims from dismissal. The Opposition's assertion that the issue should be left for the jury is incorrect. *See* Opp. at 30. The cases on which it relies involved "disputed questions of material fact." *Ciardelli v. Rindal*, 582 N.W.2d 910, 912 (Minn.1998)); *see also Highway Sales Inc. v. Blue Bird Corp.*, 559 F.3d 782, 799 (8th Cir. 2009) (discussing analysis where evidence is "equivocal"). All of the relevant facts—e.g., when Plaintiff discovered the alleged yellowing—are within Plaintiff's possession; he simply refuses to plead or otherwise provide them.

The Opposition's argument regarding estoppel is misguided. Estoppel applies when a defendant's conduct prevents a plaintiff from filing suit until after the statute of limitations has run. *See* Motion at 26-27. The Opposition's argument focuses on alleged conduct that at most bears on consumers' initial purchase of the Sealant, not anything that would have the slightest impact on a consumer's decision to file suit if he was dissatisfied with the Sealant's performance. DAP is not estopped from raising the statute of limitations defense.

### CONCLUSION

For these reasons, the Court should dismiss the Complaint in its entirety, with prejudice.

Dated: January 5, 2021             **HINSHAW & CULBERTSON LLP**

*s/ Russell S. Ponessa*
Russell S. Ponessa, Reg. No. 169316
Anju Suresh, Reg. No. 0397080
333 South Seventh Street, Suite 2000
Minneapolis, MN 55402
Telephone: 612-333-3434
Email: rponessa@hinshawlaw.com
Email: asuresh@hinshawlaw.com

**ARMSTRONG TEASDALE, LLP**
Charles W. Steese (*Pro Hac Vice*)
IJay Palansky (*Pro Hac Vice*)
Alec Harris (*Pro Hac Vice*)
Amber Gonzales (*Pro Hac Vice*)
4643 S. Ulster Street, Suite 800
Denver, CO 80237
Telephone: 720-200-0676
Email: csteese@atllp.com
Email: ipalansky@ atllp.com
Email: aharris@ atllp.com
Email: agonzales@atllp.com

**ATTORNEYS FOR DEFENDANT DAP PRODUCTS INC.**